## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,

    **Plaintiff,**

    v.                                        CASE NO. 19-3178-SAC

ANDREW J. PALM, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff Richard Grissom is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his claim in Count V against Defendants Link, Randolph and Fuoss, should not be dismissed for failure to state a claim. The Kansas Department of Corrections is directed to prepare a *Martinez* Report for Plaintiff's remaining claims.

**1. Nature of the Matter before the Court**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"), the events giving rise to his Complaint occurred during his incarceration at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").

Plaintiff alleges excessive force and retaliation stemming from an altercation with Defendant Palm on November 25, 2017. The incident occurred when Defendant Palm asked Plaintiff to bring him a bag of cedar Plaintiff was carrying in preparation for a Pipe and Drum ceremony. An altercation ensued after Plaintiff asked Palm to call Captain Mansfield regarding

1

his approval to possess the bag, and Palm's improper handling of the medicine bag in violation of regulations with his "unclean and non purified hands." When Plaintiff asked again to go to the Captain's Office, Palm responded that if he wanted to see the Caption he should "turn around and cuff up." A physical altercation then ensued after Palm attempted to cuff Plaintiff with a single pair of regular-sized black hinged cuffs despite Plaintiff's protests that he needed previously-approved large, extra-length cuffs. Palm stated that he would take Plaintiff's actions as a refusal, and called over the radio for an emergency code for "Officer needs assistance." Plaintiff alleges that Defendant Loewen and the other officers responding to the incident did not intervene to stop Palm from attacking Plaintiff.

Plaintiff alleges that he was approved by medical and the "Seg Lieutenant" for the use of two sets of large cuffs due to his large wrists and shoulder injury. Later the facility purchased a set of "large extra length" cuffs that had a six-inch chain in the middle connecting the cuffs together to replace having to use two sets of large cuffs. A magnetic sign was affixed to Plaintiff's metal door stating in bold black letters "large extra length" to ensure that all officers utilized the correct cuffs when restraining Plaintiff. Plaintiff alleges that Defendant Palm was well aware of Plaintiff's restrictions and had cuffed Plaintiff over 200 times using the extra-large length cuffs or two sets of large cuffs.

Plaintiff alleges that on December 8, 2017, he was issued a disciplinary report written by Defendant Link, the property officer, for dangerous contraband due to items discovered with Plaintiff's property that did not belong to Plaintiff. Plaintiff alleges that his property was not properly inventoried, and that he was transferred to HCF before he was given an opportunity to go through his property. Plaintiff alleges that over $10,000 worth of his property was destroyed.

Plaintiff alleges that his transfer to HCF long term ad seg after the incident was retaliatory. Plaintiff alleges that Schnurr knew the transfer would limit Plaintiff's ability to talk to his wife and attorneys regarding potential litigation regarding the excessive force incident. Plaintiff also alleges that the transfer was ordered before Plaintiff received a hearing regarding the incident and after Plaintiff filed a personal injury claim naming Schnurr as a defendant.

Plaintiff names as Defendants: Andrew J. Palm, Officer in Charge and First Sergeant at EDCF; Daniel Schnurr, Former Warden at EDCF; Maria Bos, Classification Administrator at EDCF; Dustin Randolph, Unit Team Manager at EDCF; Andrew Fuoss, Unit Team at EDCF; Patrick Mansfield, Captain and Shift Supervisor at EDCF; Jessica Link, Sergeant in Charge of the Property Room at EDCF; Abraham Loewen, Corporal and Second Officer at EDCF; and (fnu) (lnu) Officer at EDCF. Plaintiff seeks to expunge his disciplinary conviction regarding the November 25, 2017 incident,[1] and compensatory and punitive damages.

As Count I, Plaintiff alleges that Defendant Palm was deliberately indifferent in violation of the Eighth Amendment and his liberty interests when he intentionally twisted Plaintiff's wrist into a single pair of regular-sized cuffs with excessive force and in bad faith. Plaintiff alleges that medical and the Seg. Lieutenant had previously approved him for use of large, extra-length cuffs or two sets of large cuffs, and Palm was well aware of Plaintiff's medically-approved needs from restraining him over 200 times in the past couple of years. Plaintiff alleges that Defendant Palm refused Plaintiff's requests for longer cuffs; stated that he would "make them fit"; and forcibly

---

[1] Although Plaintiff does not challenge his disciplinary conviction in any of his Counts, the Court notes that § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions. *Balisok*, 520 U.S. at 648.

twisted Plaintiff's left wrist into a single pair of regular-sized cuffs after two other attempts caused instant pain and injury. Plaintiff alleges that he was not being disrespectful, and that a second officer witnessed this incident.

As Count II, Plaintiff alleges that Palm violated the Eighth Amendment and committed assault and battery under Kansas law when he used excessive force in an unprovoked attack on Plaintiff using metal handcuffs and a metal mace can as weapons. Plaintiff alleges that Palm struck Plaintiff in the back and head several times with metal cuffs, wielding them like brass knuckles. Plaintiff alleges that this attack was done after Plaintiff had retreated into his cell to avoid physical contact by Palm. Plaintiff alleges that during this attack, he was struck repeatedly in the head by the bottom of Palm's metal mace can. Plaintiff alleges that he received numerous lacerations and bruises on his neck, back, hands, face and head.

As Count III, Plaintiff alleges that Defendants Loewen and (fnu) (lnu) Officer violated the Eighth Amendment when they responded to the November 25, 2017 incident and failed to intervene or prevent the excessive force attack by Palm. Plaintiff alleges that Loewen was the second officer in the cellhouse and stood within arm's reach just outside of Plaintiff's cell door. Plaintiff alleges that during the entire attack on Plaintiff, Defendant Loewen and the other officer responded to the code and did not intervene to stop the attack or to protect Plaintiff.

As Count IV, Plaintiff alleges that Defendants Mansfield and Schnurr violated the Eighth Amendment when they failed as supervisors to take disciplinary or other actions to curb the known pattern of physical abuse and abuse of discretion by Palm against inmates. Plaintiff alleges that numerous grievances and complaints were filed against Defendant Palm prior to the incident at issue, and Palm was reassigned to a different post a week before the incident because of a riot that almost erupted in Plaintiff's cellhouse due to Palm's abuse of discretion. Plaintiff alleges that

despite the complaints and reassignment, Defendants Mansfield and Schnurr allowed Palm to continue his abuse by reassigning him back to Plaintiff's cellhouse on November 25, 2017.

In Count V, Plaintiff alleges that Defendants Link, Randolph, and Fuoss knowingly, willfully, and intentionally destroyed Plaintiff's personal property without due process in violation of the Fourteenth Amendment and his liberty interest. Plaintiff alleges that his Property Inventory Sheets did not have the correct date when his property was supposedly inventoried, and there were at least three different handwriting styles on it but no signature of those responsible for the accuracy. Plaintiff alleges that other inmates informed him that they witnessed officers throwing Plaintiff's property in the trash, but they retrieved it and took it to the Captain's Office. Plaintiff was found not guilty when Defendant Link issued a disciplinary report against Plaintiff over property issues. On January 8, 2018, Defendant Randolph ordered Defendant Link to refrain from destroying Plaintiff's three boxes of stored property in the near future to afford Plaintiff an opportunity to exchange and go through his property. Defendants Randolph and Fuoss failed to retrieve Plaintiff's stored property and transferred him to a different facility three weeks later on January 29, 2018. On April 21, 2018, Plaintiff was informed by HCF Unit Team Pettijohn that Plaintiff's property had been destroyed by EDCF.

In Count VI, Plaintiff alleges that Defendants Bos, Randolph, Fuoss and Schnurr violated the First Amendment when they retaliated against Plaintiff in response to Plaintiff's 2015 lawsuit, grievances, and a Personal Injury Claim filed against EDCF administration and staff. Plaintiff alleges that during seg review on January 8, 2018, Randolph informed Plaintiff that Randolph and the seg review board were recommending a transfer of Plaintiff to "general population" in a different facility to avoid possible reprisals by EDCF staff. Plaintiff alleges that there was no mention of him being placed in long term ad seg.

On January 19, 2018, Defendant Fuoss angrily informed Plaintiff that he was guilty of battering Defendant Palm, that he would have his disciplinary hearing, would be transferred to long term ad seg, and that he had discussed this with the Deputy Warden to ensure this would happen. On January 25, 2018, Defendant Bos, who was also a defendant in the 2015 lawsuit against EDCF staff for unjustified confinement of over twenty years in ad seg, also issued a report reiterating Fuoss's report. Defendant Bos denied Plaintiff's request a year earlier to be transferred away from EDCF because she felt that they would return Plaintiff to long term ad seg at their first opportunity. Unit Team Hoover agreed with Plaintiff's request. Plaintiff alleges that Defendant Schnurr was aware that Plaintiff had filed a lawsuit in 2015, a grievance and a Personal Injury Claim on November 28, 2017, that named him as a defendant, and that Plaintiff's wife indicated her intention to sue him over the November 25, 2017 incident. Plaintiff also alleges that Schnurr, along with the other defendants, approved and transferred Plaintiff to long term ad seg at HCF prior to Plaintiff receiving a hearing or being found guilty of any wrongdoing. Plaintiff also alleges that Schnurr knew that the transfer would restrict Plaintiff's ability to talk with his attorneys and his wife regarding this lawsuit.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

7

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Excessive Force and Retaliation

Plaintiff alleges that Defendant Palm's actions constituted excessive force under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment"). The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10. However, not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See id*. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff claims that Defendant Loewen and another unidentified officer responded to the scene of the incident and failed to intervene; and that Defendants Mansfield and Schnurr failed to properly supervise Defendant Palm. Plaintiff's claims require proof that each defendant personally committed a constitutional violation. *Keith v. Koerner*, 843 F.3d 833, 837–38 (10th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")). It is not enough that a defendant acted in a supervisory role when another defendant violated a plaintiff's constitutional rights. *Keith*, 843 F.3d at 838. Plaintiff "must show an affirmative link between [a defendant] and the constitutional violation, which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Id*. (internal quotation marks omitted) (citing *Schneider v. City of Grand Junction Police Dep't*., 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195)).

Plaintiff claims in Count VI that Defendants Bos, Randolph, Fuoss and Schnurr, retaliated against Plaintiff because he filed a previous lawsuit, grievances and the Personal Injury Claim

against EDCF administration and staff. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court finds that the proper processing of Plaintiff's excessive force and retaliation claims cannot be achieved without additional information from appropriate officials of EDCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of EDCF to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**2. Property Claim**

Plaintiff's property claim is subject to dismissal. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable. In fact, Plaintiff acknowledges in his Complaint that he has initiated a case in Reno County District Court seeking compensation for his destroyed property. (Doc. 1, at 18.) (Case No. 19-cv-40). Because an adequate, state post-deprivation remedy exists, Plaintiff must show cause why his claim in Count V against Defendants Link, Randolph and Fuoss, should not be dismissed for failure to state a claim. Furthermore, any property claim would need to comply with the federal rules regarding joinder of parties and claims. *See* Fed. R. Civ. P. 18 and 20.

**IV. Motions**

**1) Motion for Appointment of Counsel**

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3), arguing that he has been unsuccessful in his attempts to contact numerous attorneys. The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible

case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

**2) Motion to Compel Defendants' Addresses to Execute Service**

Plaintiff has filed a motion asking the Court to compel all defendants to supply their addresses for service of process. Plaintiff states that because he is in segregation he is unable to obtain defendants' current addresses, and some of the Defendants are no longer employed at EDCF. The Court will enter a service order that will address waiver of service and the submission of addresses of former employees under seal. Therefore, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Defendants' Addresses to Execute Service (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **January 10, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's claim in Count V against Defendants Link, Randolph and Fuoss, should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that:

(1) The Clerk of Court shall serve Defendants Palm, Schnurr, Bos, Randolph, Fuoss, Mansfield, and Loewen under the e-service pilot program in effect with the Kansas Department of Corrections ("KDOC").

(2) Upon the electronic filing of the Waiver of Service Executed pursuant to the e-service program, KDOC shall have **sixty (60) days** to prepare the *Martinez* Report. Upon the filing of that report, the AG/Defendants shall have an additional **sixty (60) days** to answer or otherwise respond to the Complaint.

(3) Officials responsible for the operation of EDCF are directed to undertake a review of the subject matter of the Complaint:

   a. To ascertain the facts and circumstances;

   b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

   c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the officials of EDCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated December 13, 2019, in Topeka, Kansas.**

> **S/ Sam A. Crow**
> **SAM A. CROW**
> **SENIOR U. S. DISTRICT JUDGE**