16-IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,
          Plaintiff,

vs.                                 No. 19-3178-EFM

ANDREW J. PALM, *et al.*,
          Defendants.


MEMORANDUM AND ORDER


State of Kanas prison inmate Richard Grissom brings the present action against numerous officers of the El Dorado Correctional Facility (EDCF) based on a November 25, 2017 incident. Grissom alleges that during the incident EDCF officers subjected him to excessive force, and that his subsequent placement in administrative segregation was retaliatory and a violation of his First Amendment rights.[1] Defendants have moved to dismiss the action, or in the alternative for summary judgment.


**Findings of Fact**

Because Defendants submitted additional evidentiary materials on the incident, including a security camera videotape, the pending motion will be construed as a

---

[1] Although he appears *pro se*, Grissom has extensively litigated his conditions of his confinement. *See Grissom v. Werholtz*, No. 07-3302-SAC, 2012 WL 3732895 (D. Kan. August 28, 2012), *aff'd*, 524 F. App'x. 467 (10th Cir. 2013); *Grissom v. Roberts*, No. 15-3221-JTM, 2017 WL 3130591, *7 (D. Kan. July 24, 2017), *aff'd*, 902 F.3d 1162 (10th Cir. Aug. 29, 2018); *Grissom v. Bell*, No. 20-3163 (D. Kan.).

motion for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]6

The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[4] Such a movant "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[5] The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] Conclusory allegations are not sufficient to create a dispute as to

---

[2] Fed. R. Civ. P. 56(a).

[3] *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017)..

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))..

[5] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325)..

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). See D. Kan. Rule 7.4.

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

an issue of material fact.[8] The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the non-moving party."[9]

The evidentiary record supports the following findings. The court excludes requested findings which are not supported by specific reference to admissible evidence, or are not material to the issues in the action.

On November 25, 2017, Officer Andrew Palm conducted an accountability/security check in A1 cellhouse at EDCF. At Grissom's cell, Palm saw a green leafy substance. It is uncontroverted that Palm was concerned the substance might be contraband.

Since he did not have a set of pass keys at the time, Palm asked the control booth to open the door. To Palm's knowledge, Grissom had little disciplinary history and little to no problem history, and he did not believe that opening the door would present a problem. Palm asked Grissom to hand him the bag.

Grissom responded in a loud, aggressive, and defiant manner, telling him, "Call Captain Mansfield down here, you're messing with me." Grissom handed Palm the bag but became upset at the way Palm was handling it.

Palm tried to deescalate the situation by telling Grissom that after he examined the bag he would return it if it was not contraband.

---

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

It is uncontroverted that Grissom was unsatisfied and continued to argue and make demands to see Captain Mansfield. Grissom then reached for the bag, saying "then give me that back," but Palm snatched it back.

Palm saw Grissom's attempt to forcefully remove something from his hands as an act of aggression, and increased his concern about what as in the bag. Palm ordered the 5'11", 215-pound Grissom to turn around so that he could be restrained, allowing him to be taken to the Captain's Office as he had been demanding. Palm also believed it was necessary to restrain Grissom to ensure his own safety, based on Grissom's tone, temperament, body language, and the fact that Grissom had just tried to forcefully remove something from his hands.

Grissom initially complied and turned around acting as though he was going to "cuff up." However, he refused to place both of his arms behind his back or to turn his wrist so that the cuff could be applied. Grissom claims in response it was because of an injury or problem with his shoulder. Because Grissom's wrist was turned in such a way that would have made it difficult if not impossible to apply the restraint, Officer Palm ordered Grissom to turn his wrist.

At that point, Grissom turned towards Officer Palm in an aggressive manner and started yelling. Palm again ordered Grissom to turn around and be restrained, but Grissom continued to refuse and repeated his aggressive actions.

Concerned for his safety, Palm issued an "officer needs assistance" call. Grissom then acted as though he was going to comply by turning his body around. However, he

4

again refused to cooperate with the restraint process, moving his arm in a back and forth motion and refusing to turn his wrist to allow the first handcuff to be secured on his wrist.

Grissom had been restrained by Palm in the past and on those occasions Officer Palm had no trouble placing Grissom in two sets of standard handcuffs with Grissom's arms behind his back and his wrists in the proper position.[10]

When Grissom resisted the restraints for a third time, aggressively yanking his arm away and turning towards Palm, Palm took this as an act of aggression. Palm was concerned Grissom was going to continue to resist, and that even if he did get one cuff on, Grissom might continue to resist and then would have one cuff that could potentially be used as a weapon.

Palm tried to place Grissom against the cell wall to allow for the response team to arrive to assist in the restraint. Grissom resisted and turned aggressively causing the cuffs to fly across the room. Grissom has claimed that during this struggle Palm tried to hit him with the cuffs, but the video of the incident shows plainly that Palm did not in fact strike Grissom with the handcuffs.

---

[10] Grissom attempts to controvert the fact, contending Palm knew he should use extra length cuffs. But the evidence is otherwise controverted that at that time (unlike later) there were no medical orders for such cuffs, and Grissom himself has acknowledged that Palm was aware of the need for "using the larger cuffs, *or a double set of cuffs* at once." (Dkt. 56-1, at 13, 18) (emphasis added). Grissom makes no attempt to controvert the fact (Def. ¶ 26) that Palm had two pairs of cuffs which he intended to use, but was thwarted by Grissom's refusal to comply with the restraint procedure

Palm realized he had misjudged Grissom's size and strength and took a fighting stance to protect himself from Grissom's punches. Palm exited the cell as soon as he determined the incoming strikes had stopped enough so that he could retreat.

Instead of retreating back into his cell, Grissom followed Officer Palm as he backed out of the cell. Because verbal commands had been insufficient, Palm administered a burst of *oleoresin capsicum* (OC) pepper spray.[11] Grissom followed Palm outside the cell into the walkway, striking Palm with his fists.

The video confirms the testimony of three witnesses that Grissom wrapped his arms around Palm's upper body in order to throw Palm over the second floor railing to the concrete floor below. Grissom that his actual plan was merely to "body slam … Palm against the second tier concrete floor."[12] The plaintiff does not controvert that, to protect himself, Palm struck Grissom with his OC can and sprayed Grissom in the eyes with the OC spray.

At no point did Grissom remain standing against the wall to be restrained. From the time Palm opened the cell door, Grissom did not retreat into the cell until after Palm used multiple bursts of OC spray. After Grissom was secured, he was examined by medical staff and found to have abrasions (scrapes), knots, and scratches on various parts of his right leg, upper body, and head.

---

[11] *See Fogarty v. Gallegos*, 523 F. 3d 1147, 1152 n. 4 (10th Cir. 2008) (discussing effect of OC spray as "causing both pain at the point of impact and irritation of the targeted individual's eyes and breathing passages").

[12] Dkt. 56-1, at 3 ¶ 17. *See* Palm Aff. at ¶ 24; Mansfield aff. at ¶ 7; Loewen Aff. at ¶ 9.

On November 25, 2017, Grissom was placed in administrative segregation at EDCF for the November 25, 2017 battery on Palm and pending his disciplinary hearing. A "central monitor" was put into place between Grissom and Palm to ensure that Grissom was not housed at any facility at which Palm was employed. To ensure the safety and security of the EDCF, Grissom was transferred to the Hutchinson Correctional Facility (HCF) for long-term administrative segregation.

Based on his conduct during the November 25, 2017 incident, Grissom was found guilty of the charges of battery and disobeying orders.

Prior to the incident Officer Palm had no formal disciplinary history, and he had never reassigned to a different cell house because of issues with inmates.

## Conclusions of Law

Defendants moved for dismissal or summary judgment, contending (1) Grissom's official capacity claims are barred by the Eleventh Amendment, (2) that there is no evidence showing any retaliatory intent in the administrative segregation after the incident, (3) that plaintiff has failed to show defendants Schnurr, Mansfeld, or Randolph had any personal involvement in the segregation, (4) that defendants Palm and Loewen are entitled to qualified immunity on plaintiff's claims of excessive force, (5) that the court should decline to exercise supplemental jurisdiction over plaintiff's state law assault claims or find such claims time-barred, and (6) that plaintiff's claims for punitive damages are unjustified under the facts.

7

Grissom's Response[13] essentially addresses none of these issues. Indeed, the Response is limited to presenting a few factual assertions, and is devoid of any legal argument. The facts Grissom which does present are relevant, or at least potentially relevant, only as to the issue of excessive force. Plaintiff makes no effort at all to counter defendants' arguments seeking dismissal of the other claims in the action. Accordingly, the court grants as uncontested the defendants' motion as to all other issues.[14]

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment."[15] Prison officers violate the Eighth Amendment if they subject an inmate to the "unnecessary and wanton infliction of pain."[16] An inmate advancing such a claim must prove both objective component and subjective components. As to the first, plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."[17] To establish the subjective component, the plaintiff must show that defendants "act[ed] with a sufficiently culpable state of mind."[18]

Given the uncontroverted facts, the court finds defendants are entitled to qualified immunity. Public officers enjoy a qualified immunity to suit under § 1983,

[13] Dkt. 56-1.

[14] *See* D. Kan. R. 7.4.

[15] *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014)

[16] *Whitley v. Albers*, 475 U.S. 312, 319 (1986)..

[17] *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (not "every malevolent touch by a prison guard gives rise to a federal cause of action.")

[18] *Id*. at 1212.

which applies "unless their conduct was unreasonable in light of clearly established law." Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law."[19]

Once Palm and Loewen raised the defense, the burden shifted to Grissom to prove (1) their actions violated a federal constitutional or statutory right, and (2) that the right was clearly established at the time of the unlawful conduct.[20] A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the Fourth Amendment.[21] This does not require the existence of a case exactly on point,[22] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[23]

The court has the discretion to determine the order in which these requirements are addressed;[24] immunity exists if either element is absent.[25] Only when a plaintiff

---

[19] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[20] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds, Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

[21] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).

[22] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[23] *White v. Pauly*, 137 S.Ct. 548, 551 (2017).

[24] *Pearson*, 555 U.S. at 236.

[25] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

satisfies this heavy burden must the defendant then satisfy the traditional summary judgment standard.[26]

In his response, Grissom stresses that under prison policy he was allowed some natural substances such as cedar or sage in connection with his Native American religion. He also contends that the condition of his shoulders and wrists required the use of extra-length handcuffs, and notes that a subsequent administrative review found Officer Palm erred in escalating the situation.

But it is also uncontroverted that there were then no medical orders requiring the use of extra-length cuffs. Grissom himself otherwise admits that at the time of the incident, the practice was to use either extra-length cuffs or use two sets of cuffs. It is also irrelevant whether the green substance was or was not actually contraband, Grissom had no right to physically resist Palm or to commit an assault on him.  Even if plaintiff's factual assertions were true, it would not justify what the video confirms to be his aggression and violent assault on Palm.

Contrary to Plaintiff's claims, the video and medical evidence demonstrate Palm did not beat Grissom. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

---

[26] *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019)

summary judgment."[27] Courts have used this standard to grant summary judgment in similar actions, where video evidence showed that no constitutional violation occurred.[28]

Finally, the fact that Palm may have been subsequently found partially at fault does not alter the qualified immunity analysis. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."[29] Grissom has pointed to no case finding a constitutional violation under similar circumstances, and thus the defendants are entitled to qualified immunity.[30]

---

[27] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[28] *See Bradshaw v. City of New York*, 855 Fed.Appx. 6, 9-10 (2d Cir. 2021) (upholding summary judgment as to prisoner's assertion guard punched him in the face as "fail[ing] in light of the contradictory video and medical evidence" which "conclusively shows that Loesch did not punch him"). *See also Emmett v. Armstrong*, 973 F.3d 1127, 1130–31 (10th Cir. 2020) (when the record "contains video evidence of the incident in question," the court "will accept the version of the facts portrayed in the video ... to the extent that it blatantly contradicts the plaintiff's version of events") (brackets & internal quotation marks omitted).

[29] *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (by itself "violation of a police department regulation is insufficient for liability under section 1983"). *See also Groh v. Ramirez*, 540 U.S. 551, 564 n. 7 (2004) (public officer is not "deprived of qualified immunity whenever he violates an internal guideline");

[30] To the contrary, *cf. Thompson v. Orunsolu*, 798 Fed.Appx. 288, 292 (10th Cir. 2020) (no constitutional violation for guard to use pepper spray against inmate who had grabbed the guard and refused orders to stop), *and Gargan v. Gabriel*, 50 F. App'x 920, 923 (10th Cir. 2002) (upholding dismissal in absence of evidence that the use of pepper spray in cell extraction was excessive), *with DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (finding constitutional violation where guard indiscriminately pepper sprayed inmates as a "practical joke").

IT IS SO ORDERED this 4th day of October, 2021, that the defendant's Motion to Dismiss or for Summary Judgment (Dkt. 38) is GRANTED as provided herein.

This case is now closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE