IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICHARD GRISSOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-3178-SAC |
| | ) |
| ANDREW PALM, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## RESPONSE TO COURT ORDER

Defendants respectfully submit, through Assistant Attorney General Matthew L. Shoger, this Response to the Court's order on July 15, 2022, directing Defendants to supply evidence relating to three issues identified by the Tenth Circuit: "(1) whether Plaintiff actually viewed the video which they referenced in their motion to dismiss, (2) whether Plaintiff was given a opportunity to view that video, and (3) whether Plaintiff was given an opportunity to view video from other cameras which may have captured the event." (Ct.'s Mem. and Order, Doc. 79 at 2.) Defendants submit that: (1) Mr. Grissom actually viewed the video; (2) Mr. Grissom necessarily had an opportunity to view that video because he actually viewed it; and (3) that no other cameras captured the event. Defendants attach five new exhibits, outlined in the table below, and state the following in support.

### INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| AA | KASPER Information Sheet |
| AB | Description of KASPER from the KDOC website |
| AC | Workforce turnover statistics from KDOC annual reports from 2018-2021 |
| AD | Affidavit of Jocilyn Oyler |
| AE | Affidavit of Lane Gregg |

## ANALYSIS

**I.   Defendants are confident that Mr. Grissom previously viewed the video, but unfortunately it has proven impossible at this late stage to verify this through an affidavit or similar evidence.**

Mr. Grissom has been housed in four different locations in three different prison facilities since the altercation in the video took place on November 25, 2017. This can be seen in the Physical Location History section of Plaintiff's KASPER (Kansas Adult Supervised Population Electronic Repository) Information Sheet.[1] (Exhibit AA, 2-3, attached.) Much of the prison staff has since turned over in all three facilities. This can be seen in workforce turnover statistics in recent annual reports from the Kansas Department of Corrections (KDOC). (Exhibit AC, attached.)  These statistics show annual turnover of at least 20% for uniformed staff and 10% for non-uniformed staff in each of the relevant facilities each year, with turnover reaching much higher in some years, sometimes exceeding 30%, 40%, or even 50%. (*Id.*) Two of the three facility's legal counsel have also turned over since the incident on November 25, 2017, as evidenced by an affidavit from Jocilyn Oyler, KDOC's El Dorado Legal Counsel. (Exhibit AD, ¶ 7, attached.)

KDOC, although not a party to this lawsuit, took the time to consult various personnel at these three different prison facilities. (*Id.* at ¶ 5.) Through these discussions, KDOC determined that *current* personnel did not show Mr. Grissom the video previously. (*Id.*) KDOC's historical and current practice is to allow inmates to view litigation-related surveillance camera footage, so it remains very likely that past personnel showed Mr. Grissom the video. (*Id.* at ¶¶ 2-3, 6.) But

---

[1] KASPER is a public database maintained by the Kansas Department of Corrections that provides information about offenders sentenced to the custody of the Secretary of Corrections. For more information on KASPER, please see attached Exhibit AB.

2

because of Mr. Grissom's various changes in location combined with staff turnover, it has proved almost impossible to identify which former personnel showed him the video. (*Id.* at 6.) As a result, Defendants are unfortunately unable at this late stage to produce an affidavit or similar evidence from those personnel to demonstrate more conclusively to the Court that Mr. Grissom previously viewed the video.

## II. Mr. Grissom's failure to raise the argument during earlier district court proceedings serves as evidence that Mr. Grissom previously viewed the video and also waives the argument.

Under Federal Rule of Civil Procedure 56(d), a party can object to a motion for summary judgment if the party does not have access to evidence needed to respond effectively. "But relief under Rule 56(d) is not automatic." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). "The protection afforded by Rule 56[d] is an *alternative* to a response in opposition to summary judgment . . . and is designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) (emphasis in original); *see also* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment (explaining changes in subsection numbering). "[W]hen the movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(c) or explain why it cannot yet do so under Rule 56(d)." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740 (4th ed. Supp. 2022). Filing a response to a motion for summary judgment under Rule 56(c) waives a party's "ability to retroactively seek relief under Rule 56(d) . . . months later." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605, 2021 WL 4170997, at *7 to *8 (D. Colo. 2021) (citing *Pasternak*, 790 F.2d at 833; *Villa v. Bd. of Cnty. Comm'rs*, 931 F.2d 900 (table opinion), 1991 WL 70714, at *4 (10th Cir. 1991)).

Here, the Court issued an Order to Show Cause (Doc. 35) why Exhibits W and X should remain sealed. About two weeks later, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 38) (hereinafter "Motion for Summary Judgment") and – on the same day – a Joint Response to Order to Show Cause (Doc. 41). In the latter, Defendants stated that "[a]ny matter relied upon in support of a statement of material fact in the Defendants' [summary judgment] motion is either attached to the motion as per Fed. R. Civ. P. 56 and D. Kan. 56.1, or has already been provided to Plaintiff." (Doc. 41 at 2). This would include the video, and Mr. Grissom never objected to this statement.

The Tenth Circuit pointed out that, in Plaintiff's Request for Mediation (Doc. 42) (which was also filed the same day as Defendants' summary judgment motion), Mr. Grissom stated, "Said exhibits have important evidentiary value and prohibiting his ability to view or read said exhibits also prohibits his ability to prepare his case." (10th Cir.'s Order, 3, June 16, 2022; Pl.'s Req. for Mediation, Doc. 42 at 1.) Although the Tenth Circuit pointed out the exhibits referred to are technically "unspecified" (10th Cir.'s Order, 3), taken in context, Defendants submit the exhibits referred to ("*Said* exhibits") were plainly Exhibits W and X. Based on the date of the filing (and especially considering the time it takes for inmates' court documents to travel to and from the court in the mail), it would be impossible for Mr. Grissom to have been referencing anything from the Motion for Summary Judgment.

The immediately preceding substantive filing, from thirteen days earlier, was the Court's Order to Show Cause why Exhibits W and X should remain sealed. So when Mr. Grissom said, "Said exhibits have important evidentiary value and prohibiting his ability to view or read said exhibits also prohibits his ability to prepare his case," he was most likely referring to those two exhibits. Although the Index of Exhibits in the *Martinez* Report provided brief descriptions, no

4

longer than five words each, of these exhibits to Mr. Grissom using words like "Report" and "Letters" (*Martinez* Report, Doc. 25 at 3), these descriptions were not repeated in the Court's Order to Show Cause. Mr. Grissom appears not to have known whether "view" or "read" was the proper verb to use for these exhibits, so he may not have consulted the Index when responding to the Order. He may have thought they could have been or simply included photos. Nothing indicated Mr. Grissom had not seen the video, Exhibit C, but only that he had not seen Exhibits W and X.

Mr. Grissom never requested during the earlier district court proceedings that the Court permit him access him access to the video, through discovery or otherwise. He did not object to the Defendants' Motion for Summary Judgment, as he could have under Rule 56(d) if he lacked access to the video. As the Court noted in its July 15th Order, "In none of [Plaintiff's] motions to extend, nor in his eventual Response to the Defendant's motions, does Plaintiff indicate he has not seen the video, or request access to the video." (Ct.'s Mem. and Order, Doc. 79 at 2.) He only requested access to documents *not* relied on by Defendants in their Motion for Summary Judgment, Exhibits W and X,[2] through his Request for Mediation. Instead of objecting under Rule 56(d) and requesting access to evidence, Mr. Grissom filed a Response to Defendants' Motion for Summary Judgment. (Pl.'s Resp. in Opp'n to Defs. Mot. to Dismiss or in the Alternative for Summ. J., Doc. 56.)

The fact that Mr. Grissom did not request access to the video in reaction to Defendants' summary judgment motion serves as evidence that he had already viewed the video. This is

---

[2] As Defendants pointed out in their Joint Response to Order to Show Cause, "Exhibits W and X are not cited or relied upon in Defendants' dispositive [summary judgment] motion." (Joint Resp. to Order to Show Cause, Doc. 41 at 2.)

5

especially true in light of Defendants' statement in their Joint Response to Order to Show Cause that all evidence relied upon in the summary judgment motion had been provided to Mr. Grissom. If this was not true, Mr. Grissom would likely have objected to that statement at that time. Mr. Grissom now appears to have changed his story for purposes of appeal. Had Mr. Grissom raised this issue in a timely manner, not only would Mr. Grissom have been allowed to view the video again by KDOC (without needing a court order), but the relevant personnel would have still been available to provide evidence that he had already seen it.

Further, by filing a Response to the Motion for Summary Judgment instead of moving for access to evidence under Rule 56(d), Mr. Grissom waived his ability to seek relief under Rule 56(d). This included waiving the ability to object to allegedly not having seen the video. This too would support the Court finding that Mr. Grissom previously viewed the video because this factual matter was waived by Mr. Grissom.

### III.   If the Court decides Mr. Grissom did not previously see the video, Defendants would not object to Mr. Grissom receiving an additional opportunity to respond to Defendants' motion.

Mr. Grissom viewed the surveillance video under supervision once again on June 29, 2022, at 10:00am. This is confirmed by an affidavit from the Unit Team Supervisor that supervised Mr. Grissom during the viewing. (Exhibit AE, ¶ 2, attached.) The video remains available for Mr. Grissom to view again upon written request. (*Id.* at ¶ 3; *see also* Exhibit AD, ¶ 2.) This video constitutes the only relevant surveillance camera footage of the incident. (Exhibit AD, ¶ 1.)

If the Court decides this June 29th viewing was actually the first time Mr. Grissom saw the video, then Defendants would not object to Mr. Grissom receiving an additional opportunity to respond to Defendants' Motion for Summary Judgment. Although Defendants do not believe

6

an additional opportunity to respond would be legally required,[3] Defendants would prefer that Mr. Grissom respond to their summary judgment motion with the benefit of having seen the video. Defendants believe that Mr. Grissom has already done so, but if the Court finds that he has not, then Defendants do not object to him receiving an additional opportunity to respond.

                                            Respectfully submitted,

                                            OFFICE OF ATTORNEY GENERAL
                                            DEREK SCHMIDT

                                            /s/ Matthew L. Shoger
                                            Matthew L. Shoger, KS No. 28151
                                            Assistant Attorney General
                                            120 SW 10th Avenue, 2nd Floor
                                            Topeka, Kansas 66612-1597
                                            matt.shoger@ag.ks.gov
                                            (785) 296-2215
                                            Fax: (785) 291-3767
                                            *Attorney for KDOC Defendants*

---

[3] For example, procedural due process arguments can be waived by failing to raise them during prior proceedings. *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1231 (10th Cir. 2015) ("Cases have consistently held that a violation of procedural due process may be waived or cured."); *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (finding waiver of procedural due process arguments by inmate plaintiffs through failure to challenge the district court's earlier findings); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004) ("Sandoval has waived any argument that she was denied due process by failing to request the hearing to which she now claims she was entitled."). Here, Mr. Grissom has failed to raise during the prior proceedings the alleged procedural issue regarding the video. Therefore, he has likely waived any procedural due process arguments regarding access to the video.

## **CERTIFICATE OF SERVICE**

        I hereby certify that on this 2nd day of August, 2022, the foregoing document was electronically filed with the clerk of the court using the CM/ECF system, with a copy served by means of first-class mail, postage prepaid, addressed to:

Richard Grissom, #33728
El Dorado Correctional Facility
P.O. Box 311
El Dorado, Kansas 67042
*Plaintiff, pro se*

                                    /s/ Matthew L. Shoger
                                    Matthew L. Shoger
                                    Assistant Attorney General