IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,

       *Plaintiff*,

vs.

       Case No. 19-3178-EFM

ANDREW J. PALM, *et al*.,

       *Defendants*.

**MEMORANDUM AND ORDER**

On July 15, 2022, in response to an Order of the Tenth Circuit, the Court directed Defendants, on or before August 2, 2022, to submit any additional factual information which might assist in resolving three issues: "(1) whether Plaintiff actually viewed the video which [Defendants] referenced in their motion to dismiss, (2) whether Plaintiff was given a opportunity to view that video, and (3) whether Plaintiff was given an opportunity to view video from other cameras which may have captured the event." The Court also invited Plaintiff to submit additional evidence by the same date.

Defendants have timely responded.

In addition to supplying additional factual evidence, the Defendants also present two arguments. First, they contend that Plaintiff's prior pleadings waived the issue of video access. Second, they state that "[i]f the Court decides this June 29th [2022] viewing was actually the first

time Mr. Grissom saw the video, then Defendants would not object to Mr. Grissom receiving an additional opportunity to respond to Defendants' Motion for Summary Judgment."

The Court does not address either of these additional arguments, as the Order of the Tenth Circuit limits the Court's jurisdiction to issuing findings as to the three questions posed in that Order.

## A.   Particular Factual Findings

Plaintiff was convicted in 1989 of a number of crimes, including the murders of three women and aggravated kidnapping, and began serving four consecutive life sentences

Plaintiff states under oath that he has never viewed surveillance video of the incident. Under the circumstances of the case, Plaintiff's averment is not conclusive in itself.[1]

In the time since the incident, Plaintiff has been incarcerated at El Dorado Correctional Facility, Hutchinson Correctional Facility, and Lansing Correctional Facility.  Because of staff turnover at these facilities in the intervening years, it is not possible to determine conclusively that Plaintiff actually viewed the video of the incident.

Prisoners in Kansas are not given direct access to prison videos in disciplinary hearings.[2] However, it is the historical and current practice of the KDOC to allow inmates to view, under

---

[1] *See State v. Redcap*, 318 P.3d 1202, 1214 (Utah Ct. App. 2014) ("[A] reasonable person might conclude that an inmate serving a life sentence might be less deterred by the risk of a perjury conviction than a non-inmate."), *abrogated on other grounds by State v. Hummel*, 393 P.3d 314 (Utah 2017).

[2] K.A.R. 44-13-403(l)(1) ("Testimony and evidence shall not be received by the hearing officer or introduced outside the presence of the accused inmate, except that the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence").  *See Norwood v. Roberts*, 53 Kan.App.2d 772, 393 P.3d 169, 173 (2017) (due process not violated where "the hearing officer, a neutral party, reviewed the tape and provided Norwood a summary of its relevant contents as part of the written decision"); *Grissom v. Heimgartner*, 2017 WL 3444531, at *1 (Kan. Ct. App. 2017) (Plaintiff "submitted the names of three witnesses and requested video footage of the incident," but was not entitled to access to video, which in any event was not preserved).

supervision, surveillance camera footage referenced in a *Martinez* report. Inmates may view videos, but are not given separate copies.

Before filing its *Martinez* Report in this action, the KDOC requested permission to seal certain exhibits, and, indeed, to preclude not only the public but Plaintiff as well from having access to them. Among other exhibits, the KDOC included Exhibit C, "confidential security videos in electronic format (security footage)," which "will need to be filed under seal and conventionally with the Court and should not be available for the Plaintiff or the general public."

The Court granted the request to seal these exhibits from the general public, but not from the Plaintiff. The Court wrote:

> The KDOC seeks to file under seal exhibits containing Plaintiff's medical records, incident reports and related documents, and video. KDOC seeks to file Exhibits B, K, L, M, N, P, S, and T under seal because of their confidential and or private nature, and asserts that these exhibits should not be available for Plaintiff or the general public. The KDOC seeks to file conventionally and under seal Exhibit C, consisting of confidential security videos in electronic format (security footage). KDOC asserts that Exhibit C should also not be available to Plaintiff or the general public. The Court will grant the motion to the extent that Exhibits B, C, K, L, M, N, P, S and T shall be filed under seal, and Exhibit C shall be filed conventionally.

The Court did not grant the KDOC's request to bar Plaintiff from accessing these exhibits, including the video. The Court reserved judgment on that extraordinary request only as to three particular exhibits, or portions of exhibits, and the Court directed the KDOC show additional cause for that relief: "The Court will grant the KDOC an opportunity to respond as to the basis for its request to not provide Plaintiff with a copy of [Exhibit B, Use of Force Packet], at 33 [a page from the Use of Force Packet]; [Exhibit L, HCF Sick Call], at 16 and 40, and [Exhibit M, Pulhux OMIS Medical Classification].

The KDOC responded to this show cause directive by essentially abandoning its request to keep Plaintiff from accessing those three exhibits, stating it would "provide Plaintiff with those portions of the sealed Exhibits identified by the Court, Exhibit B, pg. 33, Exhibit L, pgs. 16 and 40, and Exhibit M."

The KDOC also moved separately to seal two additional Exhibits, W and X, which were inadvertently omitted from its previous motion to seal. The court granted the motion to seal on September 17, but the Court did not address the KDOC's request to bar Plaintiff from access to these two exhibits.

The KDOC filed its *Martinez* Report on September 24, 2020, based on the documents it had assembled along with "video recordings available at the time of preparation."

Plaintiff responded to the *Martinez* Report on November 3, 2020, challenging various factual assertions contained in the Report, but without mentioning the video.

On December 8, 2020, the Court issued an order for the KDOC to show good cause why Exhibits W and X to the *Martinez* Report, though sealed from the public, "should not be provided to Plaintiff," whether in full or in redacted from. The Court further specified that it was "contemplating the appointment of counsel for Plaintiff for the limited purpose of mediation, possibly before one of the Court's Magistrate Judges. The parties should notify the Court as to their position on whether or not mediation would be beneficial in this case."

Defendants filed their Motion to Dismiss or for Summary Judgment at 10:26 a.m. December 21, 2020. The KDOC also responded to the show cause order as to Exhibits W and X, stating that these were exhibits to the *Martinez* Report, and the Report had essentially been superseded by the motion to dismiss.

Only a few hours later, Plaintiff filed a pleading entitled "Motion for Mediation." In this short pleading, Plaintiff stated that, "Said exhibits have important evidentiary value and prohibiting his ability to view or read said exhibits also prohibits his ability to prepare his case with all the facts so justice cannot prevail."

The title and timing of this pleading indicate that it is a direct response to the Court's Order of December 8, addressing potential mediation and Exhibits W and X. Accordingly, the pleading's usage of "said exhibits" refers to Exhibits W and X, the only exhibits for which there was an open questions as to the Plaintiff's right of access.

Given the time required for mail to reach the incarcerated Plaintiff, the Plaintiff's December 21 pleading could not have been a response to Defendant's Motion to Dismiss or for Summary Judgment.

As required by local rule, Defendant's Motion to Dismiss or for Summary Judgment included a Notice to Pro Se Litigant Who Opposes as Summary Judgment Motion. The Notice included the full text of Fed. R. Civ. Pr. 56, including Rule 56(d), which "allows a court to defer deciding a motion for summary judgment when 'a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]' "[3] Plaintiff never sought a deferral or other relief under Rule 56(d).

After obtaining several extensions of time, Plaintiff responded to the dispositive motion on June 16, 2021.

As noted in the Court's Order of July 15, 2022:

---

[3] *Bellamy v. McCollough*, 2022 WL 612447, at *7 (D. Kan. 2022) (quoting Rule 56(d) and citing *Adams v. C3 Pipeline Constr. Inc.*, 17 F.4th 40, 65 (10th Cir. 2021)).

On three separate occasions, Plaintiff moved for an extension of time to respond, citing either health reasons, his inability to visit the law library, or his desire to obtain affidavits from other inmates. Each motion to extend was granted. In none of these motions to extend, nor in his eventual Response to the Defendant's motions, does Plaintiff indicate he has not seen the video, or request access to the video. Had Plaintiff indicated a desire to access video of the incident, or suggested he had not seen the video, the Court would have directed and required that he receive such an opportunity.

**B.    Specific Findings**

The Court accordingly responds to the questions posed by the Tenth Circuit by the following findings:

1. Given all of the circumstances of the case, it is more likely true than not that Plaintiff did actually view the video at some point prior to his Response to the Motion to Dismiss or for Summary Judgment. However, the evidence is insufficient for the Court to find, beyond a reasonable doubt, that Plaintiff actually viewed the video prior to his Response.

2. Plaintiff had the opportunity to view the video upon request.

3. There is no other video from other cameras.

**IT IS SO ORDERED**.

Dated this 9th day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE